## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **NICHOLAS PENN and TAMMY MALLET** | : | **CIVIL ACTION NO** |
| **VERSUS** | : | |
| **CITY OF CROWLEY**<br>**CROWLEY POLICE DEPARTMENT**<br>**CHIEF ALLEN JAMES BROUSSARD** | : | **MAGISTRATE:** |

///////////////////////////////////////////////////////////////////////////////////////////////////////////////////

## COMPLAINT FOR DAMAGES

///////////////////////////////////////////////////////////////////////////////////////////////////////////////////

The complaint of NICHOLAS PENN and TAMMY MALLET, hereinafter, sometime referred to as Petitioners/Plaintiffs, persons of full age and majority and domiciled in the Parish of Acadia, State of Louisiana, with respect represent:

## PRELIMINARY STATEMENT

This lawsuit arises out of the retaliatory actions taken by Chief Allen James "Jimmy" Broussard (herein after sometimes referred to as "Chief" or "Chief Broussard") against Sergeant Nicholas Penn and Captain Tammy Mallet for their cooperation in the investigation into Chief Broussard's criminal conduct. Additionally, Chief Broussard, the Crowley Police Department, and the City of Crowley have started a campaign against Sgt. Penn and Cpt. Tammy through a series of event that will be more thoroughly described below, and as such, Petitioners seek damages for the following:

1. Violation of Louisiana's Whistle Blower Statute under La. R.S. 23:967 via Chief Broussard's clearly retaliatory actions taken against both Sgt. Penn and Cpt. Mallet;

2. Violation of Title VII of the Civil Rights Act of 1964 through the creation of a hostile work environment for both Cpt. Mallet and Sgt. Penn; and

3. Violation of 42 U.S.C. § 1983 due to Chief Broussard's willful and flagrant disregard for Sgt. Penn's and Cpt. Mallet's federally secured right to freedom of speech through the First Amendment to the United States Constitution, and for their status as a protected group via La. R.S. 23:967.

## JURISDICTION

1.

Jurisdiction is founded on 28 U.S.C. § 1331. The plaintiff further invokes jurisdiction of this Honorable Court, under 28 U.S.C. § 1367 to adjudicate claims arising under the Laws of the State of Louisiana including but not limited to Article 2315, et. seq., of the Louisiana Civil Code.

## VENUE

2.

Venue lies in this Court under 28 U.S.C. § 1391 (b) (2), as the events giving rise to this claim occurred within this judicial district.

## DEFENDANTS

3.

Made Defendants herein are:

A. CITY OF CROWLEY, a political subdivision, Municipal Corporation and/or political entity with the capacity to sue and be sued. CITY OF CROWLEY is the employer of CHIEF ALLEN JAMES BROUSSARD. Sometimes hereinafter referred to as "CITY;"

B. CROWLEY POLICE DEPARTMENT, a political subdivision, Municipal Corporation and/or political entity with the capacity to sue and be sued. CROWLEY POLICE DEPARTMENT is the political subdivision, Municipal Corporation and/or political entity of which Chief Allen James Broussard had direct control over in an official and managerial capacity; and

C.  CHIEF ALLEN JAMES BROUSSARD, sometimes hereinafter referred to as "Chief Broussard or Chief" a person of the full age of majority who was at all times material here to CHIEF of POLICE, Crowley Police Department, CITY OF CROWLEY, State of Louisiana. CHIEF ALLEN JAMES BROUSSARD is sued in both his individual and official capacities.

## D.  **STATEMENT OF FACTS**

## E.  **INCIDENT**

4.

On or about April 5, 2020, Captain Tammy Mallet (hereinafter referred to as "Cpt. Mallet or "Captain Mallet") and Sergeant Nicholas Penn (hereinafter referred to as "Sgt. Penn or Sergeant Penn") were (and are to date) employees of the City of Crowley through the Crowley Police Department.

5.

On or about April 5, 2020, Sergeant Whitney Trey Broussard (herein after referred to as Sgt. Broussard) reported an incident, with complaint number 20-02671in QuickPD, concerning Officer Ashley McElroy.

6.

On information and belief, the report detailed how Officer McElroy slammed Travis Cormier, an individual who was in handcuffs, into a locker with such force that it induced a seizure in Mr. Cormier.

7.

Sgt. Broussard created an incident report for the City of Crowley Police Department's internal affairs division to investigate, and per company policy forwarded this report to his supervising captain, Captain Troy Hebert (herein after referred to as Cpt. Hebert).

8.

Upon information and belief, according to the Crowley Police Department's company policies and/or procedures, this incident should have been investigated within 14 days of the activity being reported.

9.

Sometime thereafter, within the 14-day time window, Cpt. Hebert brought this report to the attention of Chief Allen James "Jimmy" Broussard.

10.

Chief Broussard initially ignored this report, which contained possible criminal charges against Officer McElroy and did not send this report to the district attorney's office.

11.

Cpt. Hebert brought this report to Chief Broussard's attention several times. Chief Broussard ultimately decided to try and ignore the incident, encouraging and affirming to his officers that this type of malicious, criminal behavior against the citizens in custody was warranted, justified, ratified, and or otherwise supported by Chief Broussard.

12.

Upon information and belief, Cpt. Hebert, sensing that this major violation of the Crowley Police Department's procedures, the laws and constitution of this state, and the United States

Constitution was happening, gave the information and report over to the then District Attorney, Keith Stutes.

13.

On or about September 17, Sergeant Penn, Captain Mallet, and (upon information and belief) other officers such as Captain Troy Hebert were subpoenaed by then district attorney, Keith Stutes, in reference to Officer Ashley McElroy's misconduct. They were asked to provide the District Attorney's office with any information pertaining to this case and any other alleged law breaking that may be happening in the Crowley Police Department.

14.

On September 20, 2020, being law abiding citizens, Cpt. Mallet, Sgt. Penn, and Cpt. Hebert presented Keith Stutes with evidence of and information pertaining to the repeated acts of criminal misconduct perpetrated by, or encouraged by, Chief Broussard. These acts are including but not limited to: other instances of police misconduct, which upon information and belief was  reported to Chief Broussard and never investigated; tampering with and/or destroying evidence to prevent the investigation of these misconducts; violations of city ordinances; several instances of malfeasance in office (per the Grand Jury indictment in State of Louisiana vs. Allen James Broussard, docket number 93208); pushing off and/or ignoring dereliction of duty incidents; and years of other possible unreported, unprofessional, and/or criminal behavior not specifically known at this time committed by various officers of the City of Crowley through its Chief of Police, Broussard, and by Chief Broussard himself.

15.

In October of 2020, Chief Broussard came into Cpt. Mallet's office to inform her of the subpoena from the Sheriff's Office, stating that he would be called in reference to an investigation.

Cpt. Mallet asked what this was in reference to and was told by Chief Broussard, "well, whatever *you* told the DA," indicating to Cpt. Mallet that Chief Broussard was implying that the reason he was under investigation was not through some wrong doing of his own, but was because of Cpt. Mallet.

16.

On October 22, 2020, Cpt. Mallet was called to give statements at Acadia Parish Sheriff Office on the evidence that was submitted.

17.

Shortly after this, on October 28, 2020, there was a department meeting regarding the change of positions and removal of duties.

18.

This meeting, poorly guised as switching up departments, was a retaliatory action taken by Chief Broussard, and through him the City of Crowley, against Cpt. Mallet, Cpt. Hebert, Cpt. Christopher Osborne, and Sgt. Trey. The effective changes that started from this meeting were as follows: Captain Tammy Mallet was removed from her patrol position and placed in the compliance and field training officers sections with little to no duties in an attempt to both restrict her ability to oversee patrol officers committing violations and to punish her financially by placing her in a position that does not allow overtime, unlike her prior position;  Captain Troy Hebert, Captain Christopher Osborne and Sergeant Trey Broussard all had their positions changed from prior duties to new positions in an attempt by Chief Broussard to make these individuals uncomfortable with the sudden shifting of roles.

19.

Specifically, Chief Broussard did not shift the position of the one Captain, Captain Withers, or the other sergeants who did not provide a statement to the district attorney or the Acadia Parish Sheriff Office.

20.

The chief made it very clear that these actions were fueled by his disagreement with Cpt. Mallet, Cpt. Hebert, and Sgt. Penn's choice to speak with the officials investigating his misconduct by ending the meeting with a pointed comment stating he was the head "mother fucker in charge."

21.

This statement, preceded by his removal and shifting of duties from Cpt. Mallet, Cpt. Hebert, and Cpt. Osborne (Captain Mallet's fiancé) can only be seen as an attempt to intimidate key witnesses in his ongoing investigation and to retaliate against them for their actions.

22.

Additionally, upon information and belief, Chief Broussard enacted a series of arbitrary policies designed to punish Captain Mallet and Sergeant Penn such as: restricting the department's sick leave policy, in direct violation of civil service laws; stating that office personnel, including captains, have to get direct permission from Chief Broussard himself if they need to leave the police department for any purpose; and requiring departmental approval before any information was released, which could have and likely did impact the speed in which cases and evidence were sent to the district attorney's office.

23.

Upon information and belief, Chief Broussard told other captains and department staff, such as Captain Withers, the only Captain who was not displaced by these new rules and who

refused to assist the Sheriff's Office in its investigation against Chief Broussard, that these new policies only applied to captains upfront, who were Chris Osborne, Tammy Mallet, and Troy Hebert.

24.

On or about November 2, 2020, the first day these punishments were enacted, naturally distraught over losing her position and having her duties (duties which she had diligently and dutifully served in for years) cut from her, Cpt. Mallet filed a grievance with Civil Services, a copy of which was also sent to the mayor. On November 20, 2020, the Civil Service Hearing was set for January 27, 2021.

25.

Following the notice of the hearing, Chief Broussard informed Captain Withers that her department, who had up to this point not been following the new department procedures, that her department would have to start complying, likely fearing that his retaliation would be too blatant if it didn't appear as if he cared if the whole office followed the new policies.

26.

On or about December 7, 2020, it was discovered that approximately two hundred cases were not opened or followed up on by the Detective Chad Gibson, whom has worked under Captain Withers for two years. Captain Mallet reported this information to Chief Broussard and followed up with the followed up with the Chief to determine what was happening with these cases.

27.

Chief Broussard, to show Cpt. Mallet that her continued efforts to try and get the Police Department to follow the laws of Louisiana would not be tolerated, conducted an interview of one Dawn Deville.

28.

On July 7, 2006, Cpt. Mallet filed charges with the Lafayette PD for Simple Battery and Stalking Charges in Acadia Parish, against Dawn Deville.

29.

On or about December 20, 2021, Captains Osborne and Withers, along with Sergeant Ryan Temple conducted the interview of Dawn Deville.

30.

All three interviewers stated that they had serious concerns about hiring someone with known issues with a current Captain. Two of the three outright stated that she should not be hired, while the third suggested that they had serious reservations about hiring her. Additionally, all three marked her below average to average in the majority of categories that show her potential as an officer. Despite these comments and the overwhelmingly negative reception the idea had garnered from the interviewing staff, Chief Broussard hired Dawn Deville as a reserve officer on the force.

31.

Chief Broussard was aware of these charges when he scheduled the interview to possibly hire Dawn Deville as an officer.

32.

Chief Broussard hired Dawn Deville against the recommendation of his interviewing staff specifically to create a hostile work environment for Cpt. Mallet in an attempt to coerce her into quitting.

33.

On January 20, 2021, Tammy was subpoenaed by the Civil Service Board for a hearing that was set on January 27, 2021. After this, a continuance was requested by Chief Broussard Broussard's attorney to February 8, 2021, then to the 15th of February, then again to April 8, 2021.

On April 8th, 2021, the hearing concerning the grievances filed by Cpt. Mallet and Troy Hebert were to be held in Crowley City Court. However, an agreement was reached prior to the hearing by Attorneys William Goode, counsel for Chief Broussard, and Danny Landry, counsel for Cpt. Hebert and Cpt. Mallet. The agreement was that Captains Troy Hebert, Chris Osborne, and Tammy Mallet were to be placed back into their original positions and the other arbitrary rules put in place by the Chief to harass the Captains and Sergeant Penn were also to be redacted and no longer apply.

34.

Captain Mallet resumed her position of Captain of patrol. However, Chief Broussard would not allow her to have any peace. Captain Broussard continuously allowed officers to undermine Cpt. Mallet's authority and bypass policies and procedures by going directly to him and circumventing Cpt. Mallet's authority.

35.

Rather than continuously struggle to get her own subordinates to comply with policies and procedures, which would then get ignored because of the chief's policy (and thus the city's policy)

of allowing officers to breach policy and procedure, Cpt. Mallet passed her patrol duties to Cpt. Troy Hebert with the hope that officers would have more trouble ignoring Cpt. Hebert's directives, as it seemed to Cpt. Mallet that Chief Broussard was hesitant to directly harass Cpt. Hebert and he was not hesitant to harass and contradict Cpt. Mallet. This transfer occurred on or about April 12, 2021, wherein Cpt. Mallet resumed her duties as Supervisor of Field Training Officers and dealing with compliance.

36.

July 6, 2021, lieutenant Whitney Thibodeaux went into Captain Mallet's office, having already approached Captain Mallet about this issue twice before, to make a complaint about a new dispatcher named Emma Fontenot, stating that Ms. Fontenot was not performing her duties timely and was not paying attention while on the job.

37.

Captain Mallet decided to approach Ms. Fontenot in regards to these complaints and noticed that she was playing on her phone. Cpt. Mallet called Ms. Fontenot into an office, closed the door for privacy, and went over the complaints she has been receiving about Ms. Fontenot's work ethic.

38.

 Cpt. Tammy explained why it was important for officer safety for dispatchers to pay attention and devote themselves while at work. Cpt. Mallet recorded this confrontation. Shortly after on July 9, Chief Broussard requested a copy of the recorded confrontation from Sgt. Penn, which was sent to Chief Broussard.

39.

During the entire meeting, Cpt. Mallet spoke to Dispatcher Fontenot in a respectful, professional manner.

40.

On or about July 21, 2021, Sergeant Temple sent out a companywide email, clearly directed at the corrective action Cpt. Mallet had to take with dispatcher Fontenot, stating that he "observed several instances of officers being ridiculed, belittled, yelled at, and treated as less than other officers." He further went to passive-aggressively insult Captain Mallet by stating in the company wide email that "One of the downfalls of civil service is that people who have put in the time but have no leadership skills rise through the ranks" clearly indicating that he is talking about not only a high ranking official, but as this is a small office, letting everyone know what he thinks of Cpt. Mallet's leadership capabilities. Ironically, Sgt. Temple states at the end of his defamatory and passive-aggressive email that the police need to "STOP STABBING at each other" all the while making stabs at both Cpt. Mallet's leadership abilities and undermining her supervisory duties to reprimand officers who are not following policies and procedures.

41.

At no time was Sgt. Temple reprimanded, disciplined, spoken with, or otherwise faced any negative repercussions for this blatantly disrespectful and unprofessional email sent out to all members of the Crowley Police Department.

42.

The lack of any corrective action shows that both the CITY and chief indorse and encourage this type of behavior.

43.

On or about July 21, 2021, Sgt. Penn notified Cpt. Mallet that he had found evidence in Sgt. Jeffery Braun's locker that was not turned in. At that time Cpt. Mallet advised Sgt. Penn to notify Cpt. Troy Hebert as he was Sgt. Braun's supervising captain and to write up the sergeant for failure to perform his duties with regards to the turning over of evidence. The next day, on July 22, 2021, Sgt. Penn completed the write up, handed it to Cpt. Hebert, who in turn delivered the write up to Chief Broussard. No corrective action nor disciplinary action was taken by the chief.

44.

On or about July 27, 2021, Chief Broussard sends out an email stating that Field Training will be removed from Cpt. Mallet and placed directly under him as there was "liability risk."

45.

His email implied, if not directly stated, to his officers that this liability risk was Cpt. Mallet, continuing his retaliatory behavior and creating an even more hostile work atmosphere for Cpt. Mallet. It was at this point that Cpt. Mallet, being a devoted member of the Crowley Police Department, decided to approach Chief Broussard about these emails and the removal of Field Training from her. Cpt. Mallet's concerns were brushed aside. Chief Broussard alleged that he was not attempting to make her look incompetent, despite the fact that he has stated in the previous email he was taking Field Training from her as she was a liability, and he alleged that he was unaware of any emails from Sgt. Temple, despite the fact that the email was sent out to everyone at the department via the allusers@crowleypolice.com address. Cpt. Mallet asked if anyone, including but not limited to Sgt. Temple's supervisor, would be held accountable for these actions and again Chief Broussard feigned ignorance and no corrective action was taken.

46.

On or about August 2, 2021, retaliating again against Cpt. Mallet for confronting him on the harassment she has been receiving company wide, Chief Broussard sent a notice to the police department to put Dawn Deville, the defendant in Cpt. Mallet's prior stalking and simply battery charges case, in a patrol position, stating he wanted her sent for a physical and a drug screen so she could start as a patrol officer on September 13, 2021.

47.

On August 6, 2021, Sgt. Penn received an email from the district attorney's office requesting evidence in a case from April of 2021 to be forwarded to the Acadiana Crime Lab. Sgt. Penn, upon looking into the case, noticed that no evidence was turned in four months from the date of arrest and, being the evidence custodian, began investigating in an attempt to find the missing evidence.

48.

After checking internal logs and not finding the evidence, Sgt. Penn learned that the case was assigned to Jerry Braun and Sgt. Penn informed Cpt. Mallet and Cpt. Hebert that the evidence was never turned in and that the case was assigned to Sergeant Jerry Braun. Cpt. Mallet again advised Sgt. Penn to make sure that Sgt. Braun submitted evidence properly and followed procedures, and again told Sgt. Penn to write up Sgt. Braun and notify Cpt. Hebert. Sgt. Penn then reviewed body camera footage to determine where and what the evidence in question, requested by the district attorney, was located. Sgt. Penn found and retrieved the evidence from Sgt. Braun's locker and secured it in the evidence room. Sgt. Penn then wrote up Sgt. Braun and had Chief Broussard sign for it, fearing this would be another instance of officer misconduct swept under the rug by Chief Broussard.

49.

On or about August 21, 2021, Robyn Osborne, a patrol officer with the Crowley Police Department and the daughter of Cpt. Mallet, was in a wedding and was off duty. While she was at the wedding, an ex-boyfriend of Ms. Osborne, former officer Tate Thibodeaux, went to her house and caused a disturbance. Hunter Moore, another off-duty officer who was with Ms. Osborne at the time, called the police to make Mr. Thibodeaux leave, which he did after the police were called.

50.

Later on September 8, 2021, Chief Broussard handed Cpt. Mallet an IA form and told Cpt. Mallet to forward it to an investigator. Cpt. Mallet looked at the file and saw that Chief Broussard names Robyn Osborne, Emma Fontenot, and Whitney Thibodeaux as the officers who had committed an offense that needed to be investigated. The basis for the IA was for dereliction of duty.

51.

At some point thereafter, Cpt. Mallet approached Chief Broussard to demand the reason why Ms. Osborne, the victim in this incident and someone who was off duty at the time, was being written up for dereliction of duty. Again, Chief Broussard feigned ignorance and then, only after being confronted, decided to withdraw the IA on Ms. Osborne.

52.

On August 26, 2021, Cpt. Mallet and Sgt. Penn were read their rights and were told that Chief Broussard would be referring them to the district attorney's office to have criminal charges placed against them based on the series of events that happened on or around August 6, 2021, concerning Jerry Braun and his failure to turn in evidence.

53.

The charges that were being referred to the district attorney against Cpt. Mallet were for attempted malfeasance in office and attempted obstruction of justice. The alleged basis for these charges were because she was the supervisor of Sgt. Penn, who was being referred to the district attorney's office for obstruction of justice and malfeasance in office. The alleged basis for these "crimes" according to Chief Broussard was that Sgt. Penn breached the chain of custody, as the evidence custodian, when he retrieved the evidence, which Sgt. Braun had neglected and failed to turn in for months spanning several cases, out of Sgt. Braun's locker and wrote up Sgt. Braun for again failing to secure and turn in evidence properly as per department policy.

54.

Notably, the charges that were referred to the district attorney's office for malfeasance in office did not include Sgt. Braun, the officer who had failed to submit evidence for months concerning several cases, but rather chose instead to have charges pressed against Sgt. Penn, the evidence custodian, for securing evidence in the evidence locker so it could be sent to the Acadiana Crime Lab at the request of the district attorney and Cpt. Mallet for being Sgt. Penn's supervisor.

55.

These charges were placed against Cpt. Mallet and Sgt. Penn because they cooperated with the district attorney's office in their investigation into Chief Broussard's continuous criminal conduct while in office. Charges were not placed on Sgt. Braun because he did not cooperate with said investigation.

56.

Chief Broussard has maliciously prosecuted both Cpt. Mallet and Sgt. Penn. As outlined in Eusant v. Unity Industrial Life Ins. Ass'n, 195 La. 347, 196 So. 554 (1940): (1) Chief Broussard

commenced the criminal proceedings against Cpt. Mallet and Sgt. Penn; (2) Chief Broussard is the defendant in the original proceedings with the State for his malfeasance in office and has now made Cpt. Mallet and Sgt. Penn defendants; (3) upon information and belief these charges against Cpt. Mallet and Sgt. Penn have been refused; (4) there was no probable cause for these charges; (5) Chief Broussard filed these criminal proceedings out of malice in retaliation for Cpt. Mallet and Sgt. Penn's cooperation with the District Attorney's office in their investigation into Chief Broussard's criminal activity; and (6) plaintiffs have suffered damages.

57.

September 1, 2021, Tammy Mallet went to seek Attorney Danny Landry, to bring a copy of her rights that were given to her in reference to the criminal case she is now a part of and due to the utter panic this baseless charge has caused. This baseless charge had the possibility of disrupting her career, her retirement, and her livelihood.

58.

During this meeting with Danny Landry, Cpt. Mallet was informed by Danny Landry that he was contacted by Attorney William Goode, the attorney who previously handled the civil service hearing, to make changes that would affect the prior agreement me through the civil service hearing. Upon information and belief, these changes were concerning the possibility of the Supervisor of Field Training Officers position being pulled from Cpt. Mallet, of which Cpt. Mallet was not aware until speaking with Danny Landry.

59.

As of September 8, 2021, the case file for Sgt. Nicholas Penn and Cpt. Tammy Mallet has been at the DA's office, awaiting decision.

60.

Shortly thereafter, on September 13, 2021, Dawn Deville starts work as a patrol officer.

## CAUSE OF ACTION-LOUISIANA WHISTLE BLOWER VIOLATIONS

## AGAINST THE POLICE CHIEF

61.

The allegations of paragraphs 1 – 60 are incorporated herein by reference.

62.

As described above, the retaliatory actions taken by Chief Broussard for Petitioners' role in the investigation in the Chief's criminal conduct is in direction violation of La. R.S. 23:967.

63.

The repeated actions taken by Chief Broussard to unjustly punish Sgt. Penn and Cpt. Mallet for their cooperation with the investigation into his criminal conduct while in office is the proximate cause of continuing medical issues for Petitioners. Both Petitioners have recently, due to the incredible stress of these situations, experienced stress related health issues such as elevated anxiety and blood pressure.

## CAUSE OF ACTION-CIVIL RIGHTS VIOLATIONS
## AGAINST THE POLICE CHIEF

64.

The allegations of paragraphs 1 – 63 are incorporated herein by reference.

65.

As described above, Defendant Broussard exhibits a complete disregard for Petitioners' mental well-being or for their job stability. Defendant Broussard is attempting to discriminate

against and harass Petitioners to the point that they have no alternative but to quit (thus losing their pensions, retirement and other such benefits).

66.

The following activities are a non-exhaustive list of activities that Chief Broussard either committed or encouraged that actively created a hostile environment for Cpt. Mallet, in direct violation of Title VII of the Civil Rights act of 1964:

a. Officers who are subordinate officers to Cpt. Mallet were encouraged through the actions and directives of Chief Broussard to undermine Cpt. Mallet's authority and not listen to her directives;

b. The attempted filing of an IA report on Cpt. Mallet's daughter, who was an off-duty officer and victim of the incident the IA was based on;

c. The shuffling around of her position multiple times;

d. The company wide email sent by Sgt. Temple, supported by the Chief and the CITY, insulting her capacity to lead as a captain and her character;

e. The company wide email from Chief Broussard insinuating that she is a personal liability to the CITY and the Crowley police department;

f. The shuffling around of her fiancé's position;

g. The dismissal of any and all concerns Cpt. Mallet had concerning both her treatment from fellow officers as well as her concerns about officer misconduct going unaddressed;

h. The hiring of Dawn Deville as an officer by the City of Crowley, through Chief Broussard, knowing that Cpt. Mallet had pressed charges for stalking and simple battery against her previously;

i. The filing of unfounded criminal charges against Cpt. Mallet, which could potentially destroy her entire career;

    a. The only basis of said unfounded criminal charges being that she was the supervisor of the evidence custodian who secured evidence into an evidence locker;

j. The creation of arbitrary rules that only affect "upfront captains" and their subordinates, which include her and her fiancé; and

k. Generally discriminating against and being unprofessional towards Cpt. Mallet.

67.

The following activities are a non-exhaustive list of activities that Chief Broussard either committed or encouraged that actively created a hostile environment for Sgt. Penn, in direct violation of Title VII of the Civil Rights act of 1964:

a. The creation of arbitrary rules that affected Sgt. Penn's position; and

b. The filing of false charges against Sgt. Penn;

68.

Defendant Broussard's actions were performed under the color of state law and violated Sgt. Penn and Cpt. Mallet's rights under the First Amendment and their rights under La. R.S. 23:967. As a direct and proximate result of Chief Broussard's actions, Petitioners have endured a hostile work environment and have suffered damages as a result.

69.

The Conduct of the Chief was willful and a flagrant disregard for Plaintiffs' federal and state rights. Accordingly, this defendant is liable to Tammy Mallet and Nicholas Penn under 42 U.S.C. 1983.

70.

Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. "A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."

71.

As Chief Broussard is either the perpetrator himself of the actions, or was actively encouraging his subordinates to discriminate against or ignore the authority of Petitioners, he is liable both as the actor and as the supervisory official who is affirming the unconstitutional policies that are resulting in the constitutional injury.

**OFFICIAL CAPACITY /MUNICIPAL LIABILITY UNDER MONNEL**

72.

The allegations of paragraphs 1 through 72 are incorporated herein by reference.

73.

As described above, the actions of Defendants Broussard and the City of Crowley in allowing, encouraging, and adopting these discriminatory and retaliatory practices against Sgt. Penn and Cpt. Mallet and making them into official policies of the Crowley Police Department and the City of Crowley were performed under the color of state law, violated petitioner's rights guaranteed under the First Amendment of the United States Constitution.

74.

The actions of Defendants Chief and CITY as described above are the direct and proximate cause of serious and ongoing damages to Petitioners.

75.

The actions of Defendants Chief and CITY were willful and exhibited a flagrant disregard for Plaintiffs' federally secured free speech rights. Accordingly, these defendants are liable to Plaintiffs under 42 U.S.C. ' 1983.

76.

Section 1983 applies to municipalities like the CITY OF CROWLEY when the execution of a government policy or custom inflicts the injury that the government as an entity is responsible.

77.

The City of Crowley adopted and endorsed the actions of Chief Broussard through its *deliberate indifference* of the treatment of its employees, Sgt. Penn and Cpt. Mallet, despite said employees repeated attempts to have the issues rectified.

78.

The City of Crowley is liable under Section 1983 where the municipal policy of hiring, supervision/discipline and firing was deliberately indifferent to the known and obvious consequences and where the official policy is the cause of the constitutional injury.

79.

The City of Crowley acquiesced to the policies of the Chief without properly screening, supervising, or otherwise inquiring into why the changes that the Chief was implementing were being implemented.

80.

CITY has liability under Section 1983 for failure discipline both the Chief for his retaliatory actions, or the officers who were failing to follow the procedures for turning over evidence.

## CAUSES OF ACTION

81.

Cpt. Mallet and Sgt. Penn have sustained, and continue to sustain, mental trauma which is now affecting their physical health due to the stress.

82.

As a direct consequence of Defendants' actions, Petitioners were deprived of life, liberty, and the pursuit of happiness when they were wrongfully accused of crimes, when they were the target of discriminatory office practices, and when they were targeted by Chief Broussard for their assistance in his ongoing criminal investigation,

83.

The Defendants subjected NICHOLAS PENN and TAMMY MALLET to these deprivations of their rights, either intentionally or maliciously, or by acting with a reckless disregard for whether Plaintiffs' rights would be violated by their actions. Further, the individual Defendants had no reasonable basis for believing their conduct was lawful and as such are not entitled to qualified immunity.

84.

The above- described conduct constitutes one or more violations of 42 U.S.C. 1983 et. seq.

## PESONAL INJURIES

85.

Plaintiff repeats and re-alleges the allegations in all the proceeding paragraphs as if set forth fully herein.

86.

The injuries sustained by NICHOLAS PENN and TAMMY MALLET are a result of the sole, combined and/or solidary fault, vicarious liability, strict liability and/or negligence of Defendants and/or joint tortfeasor(s) and/or his/its/their or as principal(s), employer(s), agent(s), representative(s), servant(s), employee(s), associate(s), parent(s), subsidiary(s), lessor(s), lessee(s), insured(s), insured(s) and/or insurer(s) in violation of La. Civil Code Arts. 2315 et. seq. and LA R.S. 9:2800. As a result of the sole, combined and/or solidary fault, vicarious liability, strict liability and/or negligence of Defendants, Plaintiffs suffered general, including but not limited to physical pain and suffering, mental anguish and/or distress, fear, embarrassment, humiliation, past and future loss of income and/or lost wages, and other damages that will be shown at the trial hereof.

87.

Plaintiffs have suffered and/or will suffer general and/or special, including but not limited to, great inconvenience, frustration, humiliation, embarrassment, loss of enjoyment of life and society, mental anguish and/or distress, past and future mental pain and suffering, grief. Plaintiff also prays for attorney's fees pursuant to 42 U.S.C. § 1988.

88.

Petitioners, TAMMY MALLET and NICHOLAS PENN, respectfully represent that they are entitled to the following damages from Defendants who are liable (in solido or otherwise) as a result of the acts and misconduct alleged previously for:

A.    Compensatory damages against Defendants and each of them, insolido, in the amount to be determined at the trial;

B.    The cost of this action, including attorney's fees; and

C.      Such other and further relief as this court may deem appropriate.

89.

Petitioners, TAMMY MALLET and NICHOLAS PENN, request trial by jury on all matters so triable.

90.

Petitioner reserves the right to amend petition.


WHEREFORE, Petitioners, Petitioners, TAMMY MALLET and NICHOLAS PENN, pray that the defendants be served in accordance with law, with a certified copy of this petition and duly cited to answer same and that after legal delays and due proceedings are had, that there be Judgment in favor of TAMMY MALLET and NICHOLAS PENN, against the Defendants, CITY OF CROWLEY,   CHIEF   ALLEN   JAMES   BROUSSARD,   CROWLEY   POLICE DEPARTMENT,  jointly, several and insolido for all sums that are due as allowed by law, including all court costs and expert fees, including legal interest thereon, until paid and for such other and further legal and equitable relief as the court may deem necessary, proper and reasonable.

AND FOR ALL GENERAL AND EQUITABLE RELIEF.

RESPECTFULLY SUBMITTED:
J. CLAY LEJEUNE
ATTORNEY AT LAW, L.L.C.,

/s/ J. Clay LeJeune

_____
J. CLAY LEJEUNE (NO. 26068)
JONATHAN SONGY (NO. 38899)
POST OFFICE BOX 1919
CROWLEY, LA 70526
337-788-1505
337-788-1518 (FAX)
jclaylejeune@cox-internet.com